**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | | |
|---|---|---|
| SHENZHEN EN DE CHUANG TECHNOLOGY CO., LTD., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>LEWIS MACHINING AND ENGINEERING, INC.,<br><br>Defendant. | : | CASE NO.: 7:25-CV-193 (LAG) |

**ORDER**

Before the Court is a Joint Motion to Approve Consent Judgment and Permanent Injunction (Motion) (Doc. 19). Therein, the Parties represent they "have reached a settlement of all claims and counterclaims in this Litigation." (*Id.* at 1). The Parties request entry of a consent judgment and permanent injunction against Plaintiff. (*Id.*). Parties also filed a "Joint Stipulation of Dismissal With Prejudice . . . with each Party to bear its own costs and fees." (*Id.* at 2). Defendant subsequently filed a Motion to Enforce Settlement Agreement and Memorandum in Support (Doc. 21) and Reply (Doc. 22) requesting the Court approve and enforce the Proposed Consent Judgment and Permanent Injunction. Defendant avers that it is unable to enforce the injunction on Amazon.com without the Court's ruling on the Consent Judgment and Permanent Injunction. (Doc. 21 at 2).

**PROCEDURAL BACKGROUND**

On December 12, 2025, Plaintiffs filed a Complaint for Declaratory Judgment against Defendant for disputed claims of violations and infringement of U.S. Patent No. 12,390,016 ('016 Patent), invalidity of '016 Patent and tortious interference with business relationships. (Doc. 1). On February 23, 2026, Defendant filed an Answer and Counterclaims to the Complaint averring '016 Patent and U.S. Patent No. 12,433,419 ('419 Patent) are exclusively licensed to Defendant; and Plaintiffs' advertisement and selling of

items identified in Doc. 10 ¶ 35 infringe on Defendant's '016 Patent and '419 Patent—a violation of Defendant's exclusive licensee of the Patents. (*See* Doc. 10 ¶¶ 35, 74–93). Plaintiffs filed their Counterclaim Answer on March 16, 2026. (Doc. 14). On March 27, 2026, the Parties filed a Joint Motion for Protective Order (Doc. 15) and subsequently, requested the Court stay all deadlines and proceedings for settlement negotiations. (Doc. 17). The Court granted the stay on May 4, 2026. (Doc. 18). On May 29, 2026, the instant Motion was filed. (Doc. 19).

In the Joint Motion to Approve Consent Judgment and Permanent Injunction, "Plaintiffs consent to the entry of the . . . Consent Judgment, which includes a finding of infringement of [the '016 Patent and '419 Patent], and a permanent injunction against Plaintiffs and their respective agents, officers, employees, and all persons acting in concert with them." (*Id.* ¶ 2). After reviewing the filed Proposed Consent Judgment and Permanent Injunction, counsel emailed the Court to indicate the "terms" of the Proposed Consent Judgment and Permanent Injunction "was intended by the Parties to apply specifically to Plaintiffs in this case," not other unrepresented third parties, and offered the following underlined correction to the Schedule 1 terminology:

> The term "Accused Products" also includes any products <u>made, used, sold, offered for sale, or imported by Plaintiffs</u> that are substantially similar to or colorable imitations of the products identified above, including but not limited to products sold under different platforms, ASINs, brand names, or product names that embody the same or substantially similar bed sheet retention system design and functionality.

Email from Armon Shahdadi, Counsel for Defendant, to Marcia Alvarez Benavidez, Courtroom Deputy, U.S. District Court for the Middle District of Georgia (July 23, 2026, 3:47 PM) (on file with the Court); *see also* (Doc. 19-1 at 14). The Proposed Consent Judgment states,

> "[t]he '016 Patent and '419 Patent are valid and enforceable[; and] Plaintiffs . . . acknowledge and agree that the bed sheet retention products identified in Schedule 1 to th[e] Consent Judgment, and substantially similar products and colorable imitations thereof (collectively, the 'Accused Products'),

> infringe one or more claims of each of the ’016 Patent and ’419 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents”

(Doc. 19-1 ¶¶ 4–5).

The Proposed Consent Judgment and Permanent Injunction enjoins “Plaintiffs and their respective officers, agents, servants, employees, attorneys, affiliates, subsidiaries, successors, assigns, and all persons acting in active concert or participation with any of them, and all entities owned by or under common ownership with them,” from making, using, selling, or importing into the U.S. the Accused Products in Schedule 1. (*Id.* ¶¶ 8.a.–b.; *see id.* at 6–14). Plaintiffs are enjoined from “inducing or contributing to the infringement by others” of the Patents for which Defendant is the exclusive licensee, including enjoinment from “listing, advertising, marketing, or promoting on Amazon.com or any other online or offline marketplace or platform” and Plaintiffs shall not infringe or induce or contribute to infringement of the “copyright owned by or exclusively licensed to [Defendant] . . . .” (*Id.* ¶¶ 8.a.–e.). Plaintiffs are further enjoined from “engaging in email spoofing, impersonation, false or bad-faith reports to Amazon.com or any other marketplace . . . or other conduct interfering with [Defendant’s] enforcement of its intellectual property rights or th[e] Consent Judgment.” (*Id.* ¶ 8.f.).

Finally, the Proposed Consent Judgment and Permanent Injunction dismisses with prejudice all claims by Plaintiff and Defendant’s Counterclaim Counts III and IV, with each Party to bear its own costs and fees. (*Id.* ¶¶ 9–10). Pursuant to the Proposed Consent and Permanent Injunction, the Court retains jurisdiction over the Parties and the subject matter for enforcement purposes, with the Plaintiff waiving “any defense of lack of personal jurisdiction, improper venue, or forum non conveniens.” (*Id.* ¶¶ 11–12).

On June 29, 2026, Defendant filed a Motion to Enforce the Settlement Agreement and Memorandum in Support. (Doc. 21). In the Motion to Enforce the Settlement Agreement, Defendant avers that Amazon Marketplace continues to have active listings that are covered by the Proposed Consent Judgment and Permanent Injunction. (Doc. 21 at 2). Defendant states that “[e]ntry of the proposed Consent Judgment would provide” the

required court order to get the listings taken down. (*Id.*). Defendant requests the Court enter the Proposed Consent Judgment and Permanent Injunction to protect its ability to enforce its intellectual property rights. (*Id.* at 1).

## LEGAL STANDARD

"District courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy." *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1240 (11th Cir. 1997) (citations omitted). A consent decree, however, "does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has [a] continuing effect, [thus] its terms require more careful scrutiny." *Id.* at 1242 (quoting *U.S. v. City of Miami, Fla.,* 664 F.2d 435, 441 (5th Cir. 1981)). The Court must verify the terms are fair and determine "the proposal represents a reasonable factual and legal determination based on the facts of record," which entails a record that is proven by evidence in the complaint, affidavits, or factual stipulations. *Id.* (quoting *City of Miami, Fla.,* 664 F.2d at 441). A court, however, must

> examine [a consent judgment] carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates [the] Constitution, statute, or jurisprudence. . . . [And i]f the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed.

*Id.* (quoting *City of Miami, Fla.,* 664 F.2d at 441) (emphasis omitted).

In entering any injunction, the order must include a statement of the reasons why it issued, terms of specificity, and "in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The injunction can only bind "the parties[,] . . . the parties' officers, agents, servants, employees, and attorneys[,] and" persons who are in active concert with a party and who receive actual notice. Fed. R. Civ. P. 65(d)(2); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) ("The equitable tradition has long embraced the rule that courts generally may administer complete relief *between the parties*." (emphasis in original) (internal quotation omitted)). Thus, a court must verify the proposed injunctive language complies with Rule 65(d)'s requirements even with a consent

judgment. *See Combs v. Ryan's Coal Co., Inc.,* 785 F.2d 970, 978 (11th Cir. 1986) ("while the preference is to enforce the requirements of Rule 65(d) 'scrupulously,' . . . [t]he appropriate inquiry is into the degree of specificity of the language of the decree in order to determine that appellate review is possible and that the contemnors knew their obligations."). It is also the prerogative of the Court to keep jurisdiction in a case with a consent judgment and permanent injunction. *See Spallone v. U.S.*, 493 U.S. 265, 276 (1990) ("In selecting a means to enforce the consent judgment, the [d]istrict [c]ourt [i]s entitled to rely on the axiom that courts have inherent power to enforce compliance with their lawful orders through civil contempt." (internal quotation omitted)).

## DISCUSSION

### I. Complaint, Counterclaims and Consent Judgment

In accordance with the proposed consent judgment, all of Plaintiffs' claims (Counts I–III) and two of Defendant's counterclaims (Counterclaim Counts III and IV) are dismissed with prejudice; and two of Defendant's counterclaims (Counterclaim Count I and II) are validated. (*See* Doc. 19-1 ¶¶ 9–10). With regard to the validity of Defendant's Counterclaim Counts I and II the Court considers whether there is adequate factual and legal support. *See Stovall*, 117 F.3d at 1142; (Docs. 1, 10, 14). Counterclaim Counts I and II allege infringement on Defendant's exclusive licensure of '016 Patent and '419 Patent under 35 U.S.C. § 271. (Doc. 10 ¶¶ 74–79, 80–85). Pursuant to 35 U.S.C. § 217,

> (a) . . . whoever, without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
> (b) Whoever actively induces infringement of a patent shall be liable as an infringer.
> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or

> commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

**A. Findings of Infringement**

Having reviewed the record, the Court finds as follows:

1. The Court has subject matter jurisdiction over this matter and personal jurisdiction over the Parties. (Doc. 1 ¶ 8; Doc. 10 ¶¶ 6–8; *see* Doc. 19-1 ¶ 1).

2. Defendant is the exclusive licensee of ‘016 Patent and ‘419 Patent, with the right to sue for infringement and collect damages. (Doc. 10-1 at 2–48; Doc. 10-2 at 2–68; Doc. 10-3 at 2–3; *see* Doc. 19-1 ¶¶ 2–3); 35 U.S.C. § 271.

3. ‘016 Patent and ‘419 Patent are valid and enforceable. (Doc. 10-1 at 2–48; Doc. 10-2 at 2–68; *see* Doc. 19-1 ¶ 4).

4. Plaintiffs’ bed sheet retention products identified in Schedule 1 (Doc. 19-1 at 6–14) (collectively, the Accused Products), are substantially similar products and colorable imitations thereof, and infringe one or more claims of each of the ‘016 Patent and ‘419 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents.[1]

**B. Consent Judgment**

Next, the Court reviews the terms of the Proposed Consent Judgment and Permanent Injunction to determine if it is “unconstitutional, unlawful, unreasonable, or contrary to public policy.” *Stovall*, 117 F.3d at 1240. Nothing in the proposal is unlawful or contrary to public policy or the Constitution; rather, enforcement of the proposed consent judgment vindicates the exclusive property rights of Defendant. The Court further finds the Parties’ terms reasonable considering the facts and circumstances surrounding the infringement and retaliatory actions by Plaintiffs when Defendant tried to enforce its rights as the exclusive licensee of ‘016 Patent and ‘419 Patent. (*See* Doc. 10 ¶¶ 50–73; Exhibit V, Doc. 10-22 at 2–11; Exhibit W, Doc. 10-23 at 2; Exhibit X, Doc. 10-24 at 2–4; Exhibit Y, Doc. 10-25 at 2).

[1] (*See* Doc. 19-1 ¶ 5).

## II. Permanent Injunction

For the Court to order a permanent injunction as part of the consent judgment, the Proposed Consent Judgment and Permanent Injunction must contain, "the reasons why [the permanent injunction] issued; . . . state [the] terms specifically; and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). The Court issues this permanent injunction to protect Defendant's rights as the exclusive licensee of the '016 Patent and '419 Patent and provides clear terms and details of the acts from which Plaintiffs are enjoined. (Doc. 19-1 ¶¶ 8.a.–f.). The permanent injunction is enforceable against "Plaintiffs and their respective officers, agents, servants, employees, attorneys, affiliates, subsidiaries, successors, assigns, and all persons acting in active concert or participation with any of them, and all entities owned by or under common ownership with them," and sufficiently is limited pursuant to Fed. R. Civ. P. 65(d)(2).

## CONCLUSION

Accordingly:

1. The Parties' Joint Motion (Doc. 19) is **GRANTED**.
2. Any pending motions are **DENIED as moot** and the Clerk is **DIRECTED** to terminate all deadlines and close this case.
3. The Clerk is **further DIRECTED** to enter final judgment in favor of Defendant and against Plaintiffs.
4. The Court retains jurisdiction to enforce the Consent Judgment and Permanent Injunction.
5. The following Consent Judgment and Permanent Injunction is **ENTERED** with Schedule 1 attached to this Order.

**CONSENT JUDGMENT AND PERMANENT INJUNCTION**

Plaintiffs Shenzhen En de chuang Technology Co., Ltd. d/b/a EDCREATY, Shenzhen Zhou li chuang Technology Co., Ltd. d/b/a Downoop, Shenzhen Annaro Technology Co., Ltd. d/b/a AUKCLAX, and Shenzhen Pingzhisheng E-commerce Co., Ltd. d/b/a KLBWWA (collectively, Plaintiffs), and Defendant/Counterclaimant Lewis Machining & Engineering, Inc. (Lewis Machining), (collectively, the Parties) hereby stipulate to entry of this Consent Judgment and Permanent Injunction.

1. This Court has subject matter jurisdiction over the Parties and the subject matter of this action under 28 U.S.C. §§ 1331, 1338(a), and 1367.
2. Lewis Machining is the exclusive licensee of U.S. Patent No. 12,390,016 (the ’016 Patent), which was duly and legally issued by the United States Patent and Trademark Office on August 19, 2025, with the right to sue for infringement and collect damages.
3. Lewis Machining is the exclusive licensee of U.S. Patent No. 12,433,419 (the ’419 Patent), which was duly and legally issued by the United States Patent and Trademark Office on October 7, 2025, with the right to sue for infringement and collect damages.
4. The ’016 Patent and the ’419 Patent are valid and enforceable.
5. Plaintiffs, by their consent, acknowledge and agree that the bed sheet retention products identified in Schedule 1 to this Consent Judgment, and substantially similar products and colorable imitations thereof (collectively, the “Accused Products”), infringe one or more claims of each of the ’016 Patent and ’419 Patent under 35 U.S.C. § 271, either literally or under the doctrine of equivalents.
6. **IT IS HEREBY ADJUDGED** that the Accused Products infringe one or more claims of the ’016 Patent.
7. **IT IS HEREBY ADJUDGED** that the Accused Products infringe one or more claims of the ’419 Patent.

**PERMANENT INJUNCTION**

8. Effective as of May 18, 2026, Plaintiffs and their respective officers, agents, servants, employees, attorneys, affiliates, subsidiaries, successors, assigns, and all persons acting in active concert or participation with any of them, and all entities owned by or under common ownership with them, are hereby **PERMANENTLY ENJOINED** from:

a. making, having made, using, offering for sale, selling, or importing into the United States the Accused Products, or any other products that infringe one or more claims of the ’016 Patent, either literally or under the doctrine of equivalents;

b. making, having made, using, offering for sale, selling, or importing into the United States the Accused Products, or any other products that infringe one or more claims of the ’419 Patent, either literally or under the doctrine of equivalents;

c. inducing or contributing to the infringement by others of one or more claims of the ’016 Patent or the ’419 Patent;

d. listing, advertising, marketing, or promoting on Amazon.com or any other online or offline marketplace or platform the Accused Products or any products that infringe one or more claims of the ’016 Patent or the ’419 Patent;

e. infringing, or inducing or contributing to infringement by others of, any copyright owned by or exclusively licensed to Lewis Machining (including U.S. Copyright Reg. No. VA 2-439-098); making any false or misleading representation of fact in connection with the advertising, marketing, or sale of any product, including “Made in USA,” “Patent

Pending," or "Original USA Patents" claims; or using, applying for, or registering any trademark, trade name, or domain name confusingly similar to ZLUMBER, ZLUMBER LOCK, ZLUMBERLOCK, or LEWIS PRODUCTS; and/or

f. engaging in email spoofing, impersonation, false or bad-faith reports to Amazon.com or any other marketplace, false or defamatory reviews, or other conduct interfering with Lewis Machining's enforcement of its intellectual property rights or this Consent Judgment.

**DISMISSAL**

9. All claims asserted by Plaintiffs in their Complaint for Declaratory Judgment (Doc. 1), including claims for declaratory judgment of non-infringement of the '016 Patent, declaratory judgment of invalidity of the '016 Patent, and tortious interference with business relationships, are hereby **DISMISSED WITH PREJUDICE**, with each Party to bear its own costs and fees.

10. Counterclaim Counts I and II of Lewis Machining's counterclaims (infringement of the '016 Patent and infringement of the '419 Patent) are resolved by this Consent Judgment. All remaining counterclaims, including Counterclaim Counts III and IV, are hereby **DISMISSED WITH PREJUDIC**E, with each Party to bear its own costs and fees.

**ENFORCEMENT AND**
**RETENTION OF JURISDICTION**

11. This Court retains jurisdiction over the Parties and the subject matter of this action for the purpose of enforcing this Consent Judgment and Permanent Injunction.

12. In the event of a violation of this Consent Judgment and Permanent Injunction, Lewis Machining may seek enforcement through

contempt proceedings or such other relief as may be appropriate, including recovery of reasonable attorneys' fees and costs incurred in enforcing this Consent Judgment. Plaintiffs consent to the jurisdiction of this Court for all such enforcement proceedings and waive any defense of lack of personal jurisdiction, improper venue, or forum non conveniens.

13. This Consent Judgment and Permanent Injunction shall be binding upon Plaintiffs and their respective officers, agents, servants, employees, attorneys, affiliates, subsidiaries, successors, assigns, and all persons acting in active concert or participation with any of them who have actual notice of this Consent Judgment and Permanent Injunction.

**SO ORDERED**, this 11th day of September, 2026.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**